UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| AMERICAN HERITAGE TEXTILES, LLC<br><br>Plaintiff,<br><br>v.<br><br>DUKE IMPORTS, INC. and DOES 1-X,<br><br>Defendant. | : | Case No.: |

**<u>PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION</u>**

Dated: July 22 2026

Respectfully submitted,

/s/ Dmitry Lapin
Dmitry Lapin, Esq.
Axenfeld Law Group, LLC
2001 Market Street, STE 2500
Philadelphia PA 19103
Dmitry@axenfeldlaw.com
917-979-4570

Emily A. Danchuk, Esq.
Danchuk Law LLC
2 Victoria Lane
Falmouth, ME 04105
Telephone: (207) 747-4135
emily@emilyesquire.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS


I. **INTRODUCTION** ---------- 1

II. **RELEVANT FACTS** ---------- 1

III. **LEGAL STANDARD** ---------- 6

IV. **ARGUMENT** ---------- 6

a. This Court Has Personal Jurisdiction Over Duke, and Venue Is Proper ---------- 6

b. AHT is Entitled to Injunctive Relief---------- 7

i. AHT Is Likely to Prevail on The Merits of Its Copyright Infringement Claims. ---------- 7

ii. AHT Will Suffer Irreparable Harm in the Absence of Injunctive Relief---------- 8

iii. The Balance of Hardships Favors AHT. ---------- 11

iv. Enjoining Duke from Selling and Marketing the Infringing Products Will Serve the Public Interest. ---------- 11

c. Scope of Requested Injunctive Relief ---------- 12

d. $2,500 Security Bond is Adequate ---------- 14

V. **CONCLUSION** ---------- 14

# TABLE OF AUTHORITIES

CASES

*Arnstein v. Porter,* 154 F.2d 464, 468-69 (2d Cir. 1946) ---------- 7

*Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith*, 910 F.2d 1049, 1055 (2d Cir. 1990) ---------- 13

*Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) ---------- 6

*Carbon Autonomous Robotic Sys. v. Laudando & Assocs. LLC*, No. 2:24-cv-03012-DAD-JDP, 2025 U.S. Dist. LEXIS 113114, at *31–38 (E.D. Cal. June 12, 2025) ---------- 9

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ---------- 6

*Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997) ---------- 13

*Dow Jones & Co., Inc. v. Perplexity AI, Inc.*, 797 F. Supp. 3d 305, 333 (S.D.N.Y. 2025) ---------- 6

*Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. 340, 361, 111 S. Ct. 1282, 1296, 113 L. Ed. 2d 358 (1991) ---------- 6

*Fonar Corp. v. Domenick*, 105 F.3d 99, 104 (2d Cir. 1997); *Boisson v. Banian, Ltd.*, 273 F.3d 262, 268 (2d Cir. 2001) ---------- 7

*Gaste v. Kaiserman,* 863 F.2d 1061, 1067-68 (2d Cir. 1988) ---------- 7

*Getty Images (US), Inc. v. Microsoft Corp.*, 61 F. Supp. 3d 296, 299 (S.D.N.Y. 2014) ---------- 8

*Int'l Swaps & Derivatives Ass'n, Inc. v. Socratek, L.L.C.*, 712 F. Supp. 2d 96, 102-03 (S.D.N.Y. 2010) ---------- 8

*Lipton v. Nature Co.,* 71 F.3d 464, 471 (2d Cir. 1995) (alterations omitted) ---------- 7

*Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992) ---------- 5

*Pearson Educ., Inc. v. Labos*, No. 19 CIV. 487 (CM), 2019 WL 1949820, at *6 (S.D.N.Y. Apr. 23, 2019) ---------- 8

*Repp v. Webber,* 132 F.3d 882, 889 (2d Cir. 1997) ---------- 7

*Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir.2010) ---------- 5, 8

*Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999) ---------- 10

STATUTES

17 U.S.C. § 410(c) ---------- 7

28 U.S.C. § 1400(a) ---------- 6

TREATISES

4 Melville Nimmer & David Nimmer, *Nimmer on Copyright* § 13.02 (2021) ---------- 8

## I. INTRODUCTION

Plaintiff American Heritage Textiles, LLC ("AHT") moves for a preliminary injunction to immediately halt Defendant Duke Imports, Inc.'s ("Duke") importation, marketing, distribution, and sale of products infringing AHT's federally registered copyrights.

This is not a close case. Duke copied at least eight of AHT's copyrighted quilt and bedding designs, imported substantial quantities of the resulting infringing products, and accepted customer orders before portions of that inventory even arrived in the United States. The side-by-side comparisons leave little room for dispute: Duke appropriated AHT's protected expression while making only superficial cosmetic modifications. Even after receiving formal notice of its infringement, Duke refused to cease its unlawful conduct and instead sought to monetize the infringing inventory, including by offering to sell the certain inventory to one of AHT’s largest  wholesale customers, at a steeply discounted, fire-sale price.

Duke possesses, or recently imported, substantial quantities of infringing inventory that remain capable of entering the marketplace through wholesale, trade-show, distributor, or other sales channels. Duke's conduct has already disrupted AHT's relationship with one of its largest wholesale customers, undermined the exclusivity of AHT's designs, and threatened AHT's goodwill, market position, and future business opportunities. Unless Duke is enjoined from selling, transferring, liquidating, or otherwise disposing of the infringing inventory, AHT will remain exposed to further market displacement and loss of control over its copyrighted works—injuries that cannot be adequately remedied through money damages.

## II. RELEVANT FACTS

AHT is a designer, manufacturer, and distributor of quilt and bedding collections. Through years of creative development, AHT has created numerous original quilt designs that

are protected by federal copyright registrations. See Declaration of Leslie Turner (the "Turner Decl.) ¶¶ 2-19. Many of these designs have become commercially successful products sold through retailers nationwide, including custom private-label collections created exclusively for major wholesale customers. *Id*. AHT moves for a preliminary injunction to immediately halt Duke's ongoing importation, marketing, distribution, and sale of products infringing AHT's federally registered copyrights.

Among AHT's copyrighted works are at least eight quilt and bedding designs that Duke has reproduced and marketed without authorization. Turner Decl. ¶¶ 11-13; Ex. A. Side-by-side comparisons demonstrate that Duke copied the protected expression embodied in the Subject Works while making only minor cosmetic alterations insufficient to avoid infringement. See, Declaration of Ellie Hanners (the "Hanners Decl.") ¶¶ 5-8, 10-50.

One of the infringed works, titled "Evergreen," was created by AHT as an exclusive private-label design for Black Forest Décor, LLC ("Black Forest"). Black Forest is one of AHT's largest wholesale customers and the exclusive retailer for certain private-label AHT designs. See, Declaration of Jason Dupus (the "Dupus Decl.") ¶¶ 20–23; Turner Decl. ¶ 5-7. Black Forest invested substantial resources promoting and selling that exclusive collection, including inventory purchases, professional photography, catalog placement, print advertising, and digital marketing. Dupus Decl. ¶¶6-7.

AHT first learned of Duke's infringing products in late May 2026 after discovering Duke was marketing bedding collections substantially identical to AHT's copyrighted works under different product names. Turner Decl. ¶¶ 24-30. On May 27, 2026, AHT identified at least five infringing designs and promptly retained counsel to investigate and pursue enforcement of its copyrights. *Id*. On June 8, 2026, counsel for AHT transmitted a cease-and-desist letter

demanding that Duke cease manufacturing, importing, marketing, and selling the infringing products. Turner Decl. ¶¶ 25.

Rather than cease its infringing conduct, Duke continued importing, marketing, distributing, and attempting to sell the accused products after receiving notice of AHT's copyrights. Turner Decl. ¶¶ 26-32. During June 2026, AHT learned through Black Forest that Duke's sales representative confirmed Duke had approximately 300 queen-size and 300 king-size Evergreen bedding sets already in transit to the United States, had begun accepting customer orders before the inventory arrived, and did not intend to discard the merchandise despite being informed that the design infringed AHT's copyrights. Dupus Decl. ¶¶ 14-20. Duke also offered to sell the infringing inventory directly to Black Forest at a fire-sale discounted price in an effort to resolve the dispute and unload the inventory, an offer Black Forest rejected because the design had been created exclusively for Black Forest by AHT. *Id*.

The infringement immediately disrupted AHT's relationship with Black Forest. After learning Duke intended to continue selling the infringing products, Black Forest informed AHT that it could not effectively compete against Duke's lower-priced copies, was considering removing multiple AHT collections from its upcoming Fall catalog, and expected substantial commercial harm if Duke's infringing products remained on the market. Black Forest had already invested significant resources in inventory, catalog placement, professional photography, print advertising, and digital marketing for the affected collections, all undertaken in reliance on the exclusivity of AHT's designs. Dupus Decl. ¶¶22-27

AHT's investigation further revealed that Duke's infringement extended well beyond a single design. In total, Duke copied and marketed at least eight of AHT's federally registered copyrighted works (collectively, the "Subject Designs"), selling substantially similar versions of

those works under different product names through Duke's website, its Amazon storefront, and other retail channels. Turner Decl. ¶¶ 27–30; Hanners Decl. ¶¶ 5–50.AHT reviewed each of Duke's accused products alongside the corresponding Subject Designs. Based on Ms. Hanners' extensive experience designing, sourcing, and manufacturing quilt and bedding collections, Ms. Hanners determined that Duke systematically copied the protected expression embodied in the Subject Designs while making only superficial cosmetic modifications, and further concluded that Duke's products are manufactured using lower-quality materials and workmanship than AHT's originals. Hanners Decl. ¶¶ 5–8, 49–53. Her declaration further explains the similarities between the Subject Designs and the accused products, the inferior quality of Duke's knockoff products, and the resulting commercial harm to AHT. *Id*. At the time AHT uncovered the full scope of Duke's conduct, certain infringing products had already entered the marketplace and were being actively sold to consumers, while additional infringing products remained in transit to the United States despite Duke having already accepted customer orders before those products arrived. Dupus Decl. ¶¶ 14–17; Turner Decl. ¶¶ 27–32.

Instead of ceasing its infringing activities upon notice, Duke elected to continue exploiting the Infringing Products. Turner Decl. ¶30. Rather than halt its conduct, Duke continued it. In an effort to avoid litigation, AHT offered to refrain from filing suit if Duke immediately ceased all orders, sales, marketing, importation, and distribution of the eight identified infringing designs pending resolution of the dispute. Duke's counsel responded on June 25, 2026 that he "cannot give ... any assurances at this time that all sales of the allegedly offending products will cease immediately," explaining that Duke's principals were "busy at a trade show in Dallas" and would not be available to address the matter until they "return from the trade show." See, Declaration of Dmitry Lapin (the "Lapin Decl.") ¶5.

Rather than immediately suspend its infringing activities after receiving notice of AHT's claims, Duke refused to provide any assurance that it would cease sales or distribution, explaining through counsel that its principals were attending a national home textile trade show in Dallas and would not address the matter until they returned. At approximately the same time, Duke attempted to monetize its existing infringing inventory by offering to sell the Evergreen products directly to Black Forest at a substantial discount rather than withdrawing or destroying the infringing merchandise. Dupus Decl. ¶¶ 18–19. Together with Duke's admitted importation of infringing bedding sets and acceptance of customer orders before the inventory arrived in the United States, this conduct demonstrates Duke's intent to continue commercializing its infringing inventory—not remove it from the marketplace.

Duke's conduct establishes that substantial quantities of infringing inventory had already been imported or were in transit after Duke received notice of AHT's copyrights, that Duke accepted customer orders before certain inventory even arrived in the United States, and that Duke continued seeking commercial avenues to dispose of that inventory after learning of AHT's claims. Turner Decl. ¶¶30, 32. Duke has never represented that it destroyed, surrendered, or otherwise removed the infringing inventory from commerce. The quantity, location, and disposition of that inventory remain uniquely within Duke's possession, making expedited discovery appropriate to preserve evidence and permit meaningful enforcement of any injunctive relief. Absent preliminary injunctive relief, Duke remains free to sell, transfer, distribute, or otherwise liquidate that inventory through wholesale customers, trade shows, distributors, or other commercial channels, causing continuing irreparable harm to AHT.

## III. LEGAL STANDARD

A party seeking a preliminary injunction is generally required to show (1) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, (2) that the moving party is likely to suffer irreparable injury in the absence of a preliminary injunction, (3) a balance of the hardships tipping in favor of the moving party, and (4) that the public interest would not be disserved by the issuance of a preliminary injunction. *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010).

## IV. ARGUMENT

### a. This Court Has Personal Jurisdiction Over Duke, and Venue Is Proper

Duke is subject to general personal jurisdiction in New York because it is incorporated in New York. Lapin Decl. ¶¶ 3-4. As the Second Circuit has recognized, "…a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) (interpreting *Daimler AG v. Bauman*, 571 U.S. 117 (2014)). Because Duke is a New York corporation, this Court may exercise general personal jurisdiction over Duke consistent with due process.

Venue is proper in this District under 28 U.S.C. § 1400(a). In copyright actions, when the defendant is a corporate entity, it is deemed to reside in any district where it is subject to personal jurisdiction with respect to the action. *Dow Jones & Co., Inc. v. Perplexity AI, Inc.*, 797 F. Supp. 3d 305, 333 (S.D.N.Y. 2025) (citations omitted). Because Duke is subject to this Court's personal jurisdiction, it is deemed to reside in this District for purposes of § 1400(a).

### b. AHT is Entitled to Injunctive Relief

i. AHT Is Likely to Prevail on The Merits of Its Copyright Infringement Claims

It is well-settled that "to establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. 340, 361, 111 S. Ct. 1282, 1296, 113 L. Ed. 2d 358 (1991). Here, AHT has provided the registration numbers, certificates, and deposit materials for each of the Subject Works. These works are:

| AHT "Donna Sharp" Design | Copyright Reg. No. | Effective Date of Registration | Duke's Infringing Product |
|---|---|---|---|
| Cardinal Pine | VAu 1-535-312 | August 14, 2024 | Evergreen Cardinal |
| Evergreen | VAu 1-569-475 | August 19, 2025 | Pine Star |
| Pine Star | VAu 1-523-990 | February 16, 2024 | Pine Grove |
| Smoky Star | VAu 1-559-327 | March 25, 2025 | Charming Star |
| Peach Rose | VAu 1-535-505 | July 10, 2024 | Earth Tones |
| Red Forest | VA 2-287-327 | November 4, 2021 | Midnight Mountain |
| Timber | VA 2-279-313 | November 5, 2021 | Midnight Trails / Mountain Trails |
| Woodland Patch | VAu 1-558-795 | March 25, 2025 | Rustic Wilderness |

Under the Copyright Act, "[a] certificate of registration made before or within five years after first publication of the work shall constitute *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). Consistent with that statute, the Second Circuit has repeatedly held that a certificate of registration constitutes *prima facie* evidence of the validity of the copyright and the originality of the registered work. See *Fonar Corp. v. Domenick*, 105 F.3d 99, 104 (2d Cir. 1997); *Boisson v. Banian, Ltd*., 273 F.3d 262, 268 (2d Cir. 2001). Here, AHT timely registered each of the eight Subject Designs within five years of first publication. Turner Decl. ¶¶ 11–13 & Ex. A. Accordingly, the registrations constitute *prima facie* evidence of the validity and originality of the Subject Designs.

The second element of copyright infringement—copying of original protected expression—is likewise readily established. Hanners Decl. ¶¶ 5–53. As demonstrated in the

Hanners Declaration, the Infringing Products copy the protectable artistic expression embodied in the Subject Works while making only minor and superficial modifications insufficient to avoid infringement. These designs are substantially similar to the Subject Works and infringe Plaintiffs' exclusive rights under the Copyright Act. By reproducing, distributing, and offering for sale works that copy the protected expression embodied in the Subject Works without authorization, Defendants have infringed Plaintiffs' copyrights. See 17 U.S.C. § 106.

The respective comparisons of the works are so alike that the only explanation, whatsoever, is that Defendants copied the Subject Works, thereby constituting "striking similarity." When the two works are so strikingly similar as to preclude the possibility of independent creation, `copying' may be proved without a showing of access" *Lipton v. Nature Co.,* 71 F.3d 464, 471 (2d Cir. 1995) (alterations omitted); *Repp v. Webber,* 132 F.3d 882, 889 (2d Cir. 1997); *Gaste v. Kaiserman,* 863 F.2d 1061, 1067-68 (2d Cir. 1988); *Arnstein v. Porter,* 154 F.2d 464, 468-69 (2d Cir. 1946) and "striking similarity exists when two works are so nearly alike that the only reasonable explanation for such a great degree of similarity is that the later…was copied from the first."); 4 Melville Nimmer & David Nimmer, *Nimmer on Copyright* § 13.02 (2021).

ii. AHT Will Suffer Irreparable Harm in the Absence of Injunctive Relief

Following *Salinger*, courts have found irreparable harm in copyright cases where the infringement would substantially diminish the value of the work, where losses would be difficult to measure, and also when monetary damages would be insufficient to remedy the harms. *Pearson Educ., Inc. v. Labos*, No. 19 CIV. 487 (CM), 2019 WL 1949820, at *6 (S.D.N.Y. Apr. 23, 2019) (internal quotations omitted). *See also, Getty Images (US), Inc. v. Microsoft Corp*., 61 F. Supp. 3d 296, 299 (S.D.N.Y. 2014) (internal citation omitted) (harm may be irreparable where

the loss is difficult to replace or measure, or where plaintiff should not be expected to suffer the loss). In the context of copyright infringement, the harm to a plaintiff's property interest has often been deemed irreparable in light of possible market confusion. *Salinger* at 81. This type of confusion "will often damage the copyright holder in incalculable and incurable ways." *Int'l Swaps & Derivatives Ass'n, Inc. v. Socratek, L.L.C.*, 712 F. Supp. 2d 96, 102-03 (S.D.N.Y. 2010).

Those principles apply here. Duke imported substantial quantities of products that infringe at least eight of AHT's federally registered copyrighted works. Turner Decl. ¶¶27-32. Duke accepted customer orders before certain infringing inventory even arrived in the United States and, after receiving actual notice of AHT's copyrights, refused to halt sales or distribution. Rather than withdraw the infringing merchandise from the marketplace, Duke attempted to liquidate at least a portion of that inventory by offering the *Evergreen* products to Black Forest at a steeply discounted price. Duke's conduct demonstrates an intent to monetize its existing inventory—not abandon it. Although Duke has removed certain publicly available online listings, it has never represented that the underlying inventory has been destroyed, recalled, or removed from commerce.

The continuing threat posed by that inventory creates irreparable harm. Once infringing products enter the marketplace, they permanently diminish the exclusivity and marketplace distinctiveness of AHT's copyrighted designs. Consumers are exposed to lower-priced unauthorized substitutes, AHT loses control over the commercial exploitation of its creative works, and the value of its designs becomes increasingly difficult to restore through monetary damages alone. Evidence that an infringer's lower-priced substitute is displacing demand supports a finding of irreparable harm because the resulting loss of market position and

competitive standing cannot be fully captured through a lost-profits calculation. *See*, *e.g.*, *Carbon Autonomous Robotic Sys. v. Laudando & Assocs. LLC*, No. 2:24-cv-03012-DAD-JDP, 2025 U.S. Dist. LEXIS 113114, at *31-38 (E.D. Cal. June 12, 2025).

The harm is particularly acute because Duke's infringement has already disrupted AHT's relationship with Black Forest, one of AHT's largest wholesale customers and the exclusive retailer of one of the infringed designs. After learning that Duke intended to continue selling the infringing Evergreen products, Black Forest reevaluated whether to continue featuring AHT's exclusive Evergreen collection in future print catalogs. Although several business considerations informed that decision, Duke's infringement was a significant factor because it undermined the exclusivity that made the collection valuable. Dupus Decl. ¶¶ 18–27. The loss of customer relationships, goodwill, shelf space, and future business opportunities constitutes classic irreparable harm because those injuries cannot be measured with reasonable precision. As the Second Circuit has recognized, "it would be very difficult to calculate damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come." *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999).

Nor has Duke done anything to eliminate the threat of future infringement. Despite repeated notice of AHT's claims, Duke refused to commit to ceasing sales, continued exhibiting the infringing products at a national trade show, and attempted to dispose of infringing inventory through discounted sales. Duke has never represented that it destroyed, surrendered, or otherwise removed that inventory from commerce. Absent preliminary injunctive relief, Duke remains free to sell, transfer, distribute, or otherwise liquidate the remaining infringing products through wholesale customers, distributors, trade shows, or other commercial channels. Each such sale

further erodes the exclusivity of AHT's copyrighted works, impairs AHT's customer relationships and goodwill, and expands the market for unauthorized copies—injuries that cannot be adequately remedied by money damages.

iii. The Balance of Hardships Favors AHT.

The balance of hardships overwhelmingly favors AHT, which is suffering ongoing and irreparable harm to its copyrighted works, customer relationships, market exclusivity, and brand goodwill as a direct result of Duke's continued sale and distribution of infringing products. Absent injunctive relief, that harm will only intensify as Duke imports additional infringing inventory, expands distribution through third-party retailers, and further entrenches unauthorized knockoffs in the marketplace. By contrast, any hardship to Duke from entry of a preliminary injunction would consist solely of being required to cease conduct that is unlawful—namely, the continued importation, marketing, and sale of products that infringe AHT's federally registered copyrights.

Duke cannot claim cognizable hardship from losing the ability to profit from infringing conduct. Any claimed disruption to Duke's inventory, sales pipeline, or downstream retailer relationships arises entirely from Duke's own decision to distribute infringing products and continue distributing infringing products even after receiving formal notice of its infringement. To the extent Duke has built or expanded a revenue stream around the sale of infringing products, it cannot now complain that an injunction preventing further infringement imposes unfair hardship. The equities therefore weigh decisively in favor of preserving the status quo and preventing further harm to AHT pending adjudication on the merits.

iv. Enjoining Duke from Selling and Marketing the Infringing Products Will Serve the Public Interest

Enjoining Defendant Duke from further marketing and sale of the infringing products plainly serves the public interest. The public has a strong interest in the enforcement of valid intellectual property rights and in preventing the unlawful exploitation of copyrighted works. Federal copyright law exists to protect creative expression by ensuring that creators may reap the benefits of their original works rather than compete against unauthorized copies. Granting injunctive relief here advances that interest by preserving the integrity of the copyright system and deterring deliberate infringement.

The public also has a substantial interest in fair competition and an orderly marketplace free from consumer confusion caused by knockoff products. Allowing Duke to continue distributing near-identical copies of AHT's copyrighted designs would reward willful infringement and undermine lawful competition by permitting Duke to profit from creative works it did not create. By contrast, a narrowly tailored injunction would simply require Duke to cease unlawful conduct while preserving the status quo pending resolution on the merits. Accordingly, the requested relief squarely aligns with the public interest.

**c. Scope of Requested Injunctive Relief**

AHT respectfully requests that the Court enter a Preliminary Injunction ordering that Defendant Duke Imports, Inc., together with its officers, agents, servants, employees, attorneys, affiliates, subsidiaries, distributors, retailers, and all persons acting in concert or participation with it who receive actual notice of this Order, be immediately restrained and enjoined from the following conduct:

- Manufacturing, importing, reproducing, distributing, marketing, offering for sale, selling, transferring, consigning, or otherwise disposing of any Infringing Products;

- Fulfilling pending orders or accepting new orders for any Infringing Products;
- Transferring, liquidating, consigning, or otherwise disposing of any existing inventory of the Infringing Products, whether directly or through any wholesaler, distributor, retailer, marketplace, fulfillment center, or other third party;
- Shipping, delivering, or causing any additional Infringing Products presently in transit or otherwise under Duke's control to enter the stream of commerce;
- Destroying, altering, concealing, transferring, or otherwise disposing of documents, electronically stored information, communications, inventory records, purchase orders, invoices, shipping records, import records, sales records, or any other evidence relating to the manufacture, importation, distribution, marketing, sale, or inventory of the Infringing Products; and
- Preserving and maintaining all existing inventory of the Infringing Products pending further Order of the Court.

In addition, to ensure meaningful enforcement of the Preliminary Injunction, AHT respectfully requests that Duke be ordered, within five (5) business days after service of the Court's Order, to provide a sworn inventory and distribution statement identifying: (i) the quantity of each Infringing Product within Duke's possession, custody, or control; (ii) the location of all such inventory, including inventory held in warehouses, fulfillment centers, retail locations, or in transit; (iii) any transfers of the Infringing Products to distributors, retailers, or other third parties after June 8, 2026; and (iv) all unfulfilled customer or purchase orders for the Infringing Products. This relief is narrowly tailored to preserve the status quo and enable the Court to effectively enforce its injunction. Because Duke continued commercializing the Infringing Products after receiving notice of AHT's copyrights, and because the quantity and

location of the remaining inventory are known only to Duke, these accounting and preservation requirements are necessary to prevent the inventory from being transferred, distributed, or otherwise dissipated before the Court's Order can be fully enforced.

**d. $2,500 Security Bond is Adequate**

Rule 65(c) requires security only in an amount the Court considers proper to pay costs and damages sustained by a party later found to have been wrongfully enjoined. The amount of any bond is committed to the Court's broad discretion, and courts in this Circuit routinely impose only nominal security—or dispense with a bond altogether—where the risk of wrongful restraint is minimal. *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997). The purpose of the bond is not to compensate a defendant for the loss of unlawful profits, but rather to protect against damages arising from a wrongful injunction. *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith*, 910 F.2d 1049, 1055 (2d Cir. 1990).

A modest bond of $2,500 is more than adequate here. The requested injunctive relief is narrowly tailored to prohibit only the continued manufacture, importation, distribution, and sale of products that infringe AHT's copyrighted works. As demonstrated by the side-by-side comparisons and unrebutted copyright registrations, AHT has shown an exceptionally strong likelihood of success on the merits. Any potential harm to Duke would arise solely from being temporarily restrained from continuing conduct that Plaintiff has shown is likely unlawful. Given that undeniably strong nature of AHT's claims, a sum of $2,500, in the form of cash or check, is more than appropriate.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff American Heritage Textiles, LLC respectfully requests that the Court enter the proposed Preliminary Injunction, immediately enjoining

Defendant Duke Imports, Inc., together with its officers, agents, servants, employees, attorneys, affiliates, subsidiaries, distributors, retailers, and all persons acting in concert or participation with it, from manufacturing, importing, reproducing, marketing, advertising, distributing, offering for sale, selling, transferring, consigning, liquidating, or otherwise disposing of any Infringing Products pending final resolution of this action. Plaintiff further requests that the Court order Defendant to preserve all existing infringing inventory and provide a sworn accounting identifying the quantity, location, and disposition of all Infringing Products presently within its possession, custody, or control, together with such other and further relief as the Court deems just and proper.

Dated: July 22, 2026

Respectfully submitted,

/s/ Dmitry Lapin
Dmitry Lapin, Esq.
Axenfeld Law Group LLC
2001 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (917) 979-4570
Dmitry@axenfeldlaw.com

Emily A. Danchuk, Esq.
Danchuk Law, LLC
244 Fifth Ave, Ste E121
New York, NY 10001
Tel: (207) 747-4135
Email: emily@emilyesquire.com

*Attorneys for Plaintiff American Heritage Textiles, LLC*